COBB, Judge.
The parties to this appeal, Richard and Virginia Baker, were divorced in Arkansas in 1970 after a thirty-year marriage. The Arkansas decree recited an agreement between the parties as to alimony, an agreement apparently not otherwise reduced to writing. In the body of the decree is the following language:
The Court further finds that the parties have agreed that the defendant is to pay to the plaintiff the sum of Two Hundred and Fifth Dollars ($250.00) for alimony, and that said sum constitutes 38.4% of the net retirement pay due to the defendant from the United States Army, and that in the event the net retirement pay of the defendant is increased or decreased, that the sum considered as alimony payable to the plaintiff will increase or decrease proportionately and shall always remain 38.4% of the total net salary. Provided further that in the event the plaintiff remarries, the aforementioned alimony payment shall cease, and in the event the plaintiff returns to full time employment, the aforesaid alimony payments shall be reduced to one Hundred Dollars ($100.00) per month without reference to net salary.
Subsequent to the foregoing language is the court’s adjudicatory language:
IT IS THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED BY THE COURT that the plaintiff be, and she hereby is granted an absolute decree of divorce from the defendant, and that the property settle *604 ment entered into by the parties and attached hereto as ‘Exhibit A’ be, and the same is hereby declared to be the final and full property settlement between the parties, and that the defendant is hereby ordered to pay to the plaintiff the sum of Two Hundred and Fifty Dollars ($250.00) each month as set out hereinabove and provided further that the aforesaid Two Hundred and Fifty Dollars ($250.00) constitutes 38.4% of the defendant’s net retirement pay due him from the United States Air Force, and that in the event the aforesaid net retirement pay to the defendant is increased or decreased, the total sum payable to the plaintiff shall be increased or decreased proportionately, so that it will always constitute 38.4% of said net retirement pay, and provided further that in the event the plaintiff remarries all obligations or alimony by the defendant shall cease, and in the event that the plaintiff is employed on a full time basis then the aforementioned alimony payemnts [sic] shall be reduced to the sum of One Hundred Dollars ($100.00) per month.
In 1975 Virginia filed a URESA action in Palm Beach County, Florida, to enforce the alimony award of 38.4 percent of Richard’s net income. This resulted in the establishment of the Arkansas decree as a Florida judgment, and an order directing Richard to pay past due arrearages.
In 1976 in Putnam County, Florida, Richard sought to cancel the alimony payments. In that proceeding, the circuit court implicitly found that Virginia had returned to full employment and, pursuant to the terms of the 1970 decree, reduced the payments to $100 per month. Richard made these payments until 1986, at which time Virginia petitioned the court in Putnam County to increase her alimony and Richard counter-petitioned for its cancellation.
After hearing on August 1, 1988, the trial court entered an order denying Virginia’s petition for modification. The court interpreted the Arkansas decree to mean that once Virginia had returned to full-time employment subsequent to that decree, she was forever barred, by her own contractual terms, from receiving more than $100 per month as alimony, even if she thereafter ceased to be employed full-time. The court also held that it had no authority to modify the terms of a foreign decree, apparently unaware that the Arkansas decree was domesticated in 1975 — even though a copy of that judgment appears in the instant record. Clearly, the latter holding is erroneous. See Lopez v. Avery, 66 So.2d 689 (Fla.1953).
We agree with the appellant that the trial court has misinterpreted the terms of the original divorce decree from Arkansas. The trial court’s interpretation was based exclusively on the ambiguous language[1] from the recitation of facts in the body of the Arkansas decree, while completely ignoring its adjudicatory language. It is the latter which controls. As stated in 49 C.J.S. Judgments § 71:
Mere recitals are not indispensable parts of judgments. The judgment or decree does not reside in its recitals, but in the mandatory or decretal portion thereof, which adjudicates and determines the issues in the case and defines and settles the rights and interests of the parties as far as they relate to the subject matter of the controversy.
We interpret the adjudicatory language of the Arkansas decree to mean that Virginia, who has never remarried, is entitled to 38.4 percent of Richard’s net retirement (that percentage being $738.70 per month at the time of hearing) unless she is employed full-time. This interpretation, contrary to that of the trial court, is consistent with the obvious intent of the language employed by the Arkansas court and with Florida public policy which favors, rather than discourages, former spouses re *605 turning to work in an effort to further their own rehabilitation.
Based on the evidence adduced at the hearing of August 1, 1988, Virginia would be entitled to reinstatement of the 38.4 percent provision as of the date she is no longer employed full-time. That date has not been determined by the trial court. We also find that she was entitled to reasonable attorney’s fees at trial in the amount of $1,500 and in the amount of $1,000 for the instant appeal.
REVERSED and REMANDED for further proceedings consistent with this opinion.
W. SHARP, J., and LEE, R.E., Jr., Associate Judge, concur.

. This language is ambiguous because it does not specifically provide that full-time employment forever bars alimony based on a percentage of the ex-husband's net income, nor does it refer to the subsequent termination of full-time employment. The only reference to total cessation of alimony relates to remarriage.